STATE OF NORTH CAROLINA v. CHARLES EARL DUNCAN

No. 11

(Filed 5 October 1976)

1. Criminal Law § 34— defendant's guilt of other offenses — admissibility of testimony

Generally, in a prosecution for a particular crime the State, prior to the defendant's taking the witness stand and thus placing his general character and credibility in issue, cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense; however, such evidence may be admissible to identify the defendant as a perpetrator of the crime with which he is presently charged, and it is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission.

2. Burglary and Unlawful Breakings § 4; Criminal Law § 34— defendant's participation in burglary ring — admissibility of testimony

In a prosecution for burglary in the first degree and common law robbery, the trial court did not err in allowing evidence to the effect that defendant, two witnesses and others were members of a group which, over a period of time, had made it their business to burglarize houses previously identified by leaders of the group as likely to yield substantial loot to thieves.

3. Criminal Law § 50— identity of diamond — opinion evidence properly admitted

In a prosecution for first degree burglary and common law robbery, the trial court did not err in allowing the man whose house was burglarized to testify that a diamond shown to have been purchased from the defendant by a State's witness after the burglary was the same diamond taken from the man's wife in the course of the burglary in question, though the court did not determine that the man was qualified to testify as to the identity of the stone, since one need not be an expert in order to be competent to testify that an article seen by him in the courtroom is the same article seen by him on a prior occasion.

APPEAL by defendant from *Friday, J.,* at the 17 September 1975 Criminal Session of WATAUGA.

Upon indictments, proper in form, the appellant was tried and found guilty of burglary in the first degree and of common law robbery. He was sentenced to imprisonment for life in the Central Prison on the charge of burglary and to imprisonment for 10 years in the Watauga County jail on the charge of common law robbery. His defense was alibi.

According to the evidence for the State, Mr. and Mrs. Erwin Sherwin operated at Blowing Rock an art gallery in which they sold jewelry and other like merchandise. They operated a similar business in Florida. On 27 June 1974, they had just returned from Florida to Blowing Rock for the purpose of opening their business there for the summer season. They had brought with them from their Florida establishment a quantity of diamonds for sale in the Blowing Rock gallery in addition to Mrs. Sherwin's personal jewelry. Shortly after 9 p.m., at which time it was dark, Mrs. Sherwin was sitting in her residence alone, Mr. Sherwin having gone to the art gallery to make preparations for opening it for business. A man knocked at the front door of the residence and called to Mrs. Sherwin, saying that he had automobile trouble and desired to use her telephone. Before Mrs. Sherwin opened the door, it was pushed open from the outside and two or more men entered, seized Mrs. Sherwin, threw her to the floor, bound her hands behind her with adhesive tape and put tape over her mouth and eyes. They said they wanted her money and jewelry. Taking Mrs. Sherwin into the bedroom, they placed her on the bed, bound her feet with adhesive tape and covered her with a mattress cover up to her neck. She was able to see under the tape directly ahead of her. For some 20 minutes, the intruders ransacked the house and then departed with jewelry, diamonds and money of an estimated value of $100,000.

Jerry Glenn was also charged with these offenses and the cases against him and Duncan were consolidated for trial. On cross-examination by counsel for Glenn, without objection by Duncan, Mrs. Sherwin testified that at a preliminary hearing, at which Duncan was not present, she identified Glenn as one of the men who had so entered her home and robbed her and that she had also, prior to trial, identified Duncan as one of these men. On cross-examination by counsel for Duncan, she testified that before tape was placed over her eyes she saw the first intruder and, thereafter, she could see under the tape while lying down, as she was required by the intruders to do,

and that her original identification of Duncan was from photographs exhibited to her.

Gary Watkins, presently serving a life sentence for murder, testified for the State that he knew both Duncan and Glenn and had been engaged in stealing operations with them over a considerable period of time. According to him, Duncan and Glenn would get information on residences and pass it to Watkins and his associate, Billy Devine. Thereupon, Watkins and Devine would break into the houses and the four men and their other associates in these activities would divide the proceeds of their burglaries. These activities had extended over North Carolina, South Carolina, Virginia, Georgia and Florida. (For other activities of this group, see *State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535, decided by this Court 1 September 1976.)

According to Watkins' testimony, Duncan and Glenn arranged for Watkins and another associate to break into the Sherwin residence, which they did in the manner described in the testimony of Mrs. Sherwin. After they broke and entered and bound Mrs. Sherwin, Duncan came into the house and participated in searching for and in taking the diamonds, jewelry and money. At the time of their arrival at the Sherwin residence, it was raining and dark. Glenn remained in their parked automobile. After leaving the Sherwin residence, the stolen articles were sold and the proceeds divided among the four men. Following the arrest of Watkins and Billy Devine, Duncan and Glenn visited them in jail and offered them $50,000 and assistance in making their escape if they would testify so as to absolve Duncan, Glenn and Hunter from all responsibility for this and other criminal activities carried on by the group. For fear that he would otherwise be killed, Watkins told the police officers that he had perpetrated the Sherwin robbery and did not bring the names of the other men into it.

Billy Devine, also serving a life sentence for second degree murder, testified to the effect that he was part of the group engaged in burglaries and robberies, that he was not involved in the Sherwin burglary but, after he and Watkins had been arrested, they were visited in jail by Glenn and Duncan who offered to pay them $50,000 and to help them escape from jail if they would testify that they had perpetrated the Sherwin robbery and that Glenn and Duncan were not involved in it.

The defendants Glenn and Duncan testified in their own behalf, each denying any participation in the Sherwin robbery and testifying that he was not in the Town of Blowing Rock when it occurred. Alfred and Edward Green, brothers, testified that, following the Sherwin robbery, they had a conversation with Mr. and Mrs. Sherwin in the Watauga County Sheriff's office at which time Mrs. Sherwin demanded to know what the Greens had done with her jewelry and said that they were the men who had been in her residence and she would not make charges against them if they would return the jewelry. Deputy Sheriffs Carroll and Morris also testified that at this conference Mrs. Sherwin so stated. Mrs. Sherwin and Mr. Sherwin testified that she made no such statements.

A diamond ring, found by investigating officers in the possession of Jerry Howell, was offered in evidence by the State. Howell testified that he purchased the diamond "in a white mounting" from Duncan and thereafter changed the diamond to a different setting. The diamond was identified by Mr. Sherwin, found by the court to be qualified "to give an opinion as to the weight of the stone," as one of the diamonds taken by the burglars from his residence. The diamond stolen from Mrs. Sherwin was in a white gold setting at the time it was so taken.

*Rufus L. Edmisten, Attorney General, by John M. Silverstein, Special Deputy Attorney General, for the State.*

*Robert F. Rush for defendant.*

LAKE, Justice.

The appellant's principal contention on this appeal is that the trial court erred in allowing the State's witnesses, Watkins and Devine, to testify, over objection, concerning their associations with the appellant in other criminal activities, specifically their collaboration with him in a series of unspecified breakings, enterings and stealings extending throughout North Carolina, South Carolina, Virginia, Georgia and Florida over a period of two years prior to the breaking and entering of the Sherwin home. There is no merit in this assignment of error.

[1]   The general rule is that in a prosecution for a particular crime the State, prior to the defendant's taking the witness stand and thus placing his general character and credibility in issue, cannot offer evidence tending to show that the accused has

committed another distinct, independent, or separate offense. *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). However, as there noted, numerous exceptions to this rule are also well established. One is that such evidence may be admissible to identify the defendant as a perpetrator of the crime with which he is presently charged. Another is that such evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission.

**[2]**　The evidence here in question was to the effect that the appellant, the two witnesses and others were members of a group, which, over a period of time, had made it their business to burglarize houses previously identified by leaders of the group as likely to yield substantial loot to thieves. In *State v. Grace,* 287 N.C. 243, 213 S.E. 2d 717 (1975), as here, the defendant's defense was alibi. We held that evidence of prior similar offenses committed in conjunction with the witness was competent as tending to establish a common plan or scheme and also was competent on the question of identity.

In *State v. Stancill,* 178 N.C. 683, 100 S.E. 241 (1919), the defendant was indicted for larceny of tobacco from the barn of one Little. A witness for the State was permitted to testify that the defendant had participated in a theft of tobacco from the barn of one Wilkinson. The Court, speaking through Justice Walker, said:

> "The testimony as to the theft of the Wilkinson tobacco was offered merely to show the intent with which the defendants stole this tobacco and not to prove the accusation substantively. It was sufficiently connected with the main charge to render it competent for this purpose. It was all taken to Raymond Stancill's, the common storehouse for the loot of these defendants. It was but a part of a series of transactions carried out in pursuance of the original design, and it was contemplated by them in the beginning, that they should plunder the tobacco barns in the neighborhood, and this was one of them. The jury might well have inferred this common purpose from the evidence. Robbing Wilkinson was part of the common design, and done in furtherance of it. Proof of the commission of other like offenses

to show the *scienter*, intent, or motive is generally competent when the crimes are so connected or associated that this evidence will throw light upon that question."

In *State v. Simons*, 178 N.C. 679, 100 S.E. 239 (1919), the Court, speaking through Chief Justice Clark, said:

"There are offenses which are committed in sudden temper, or under violent provocation, or by the impulse of passion. As to these, the only competent evidence is what took place at the time. *S. v. Norton*, 82 N.C. 630. But the crime of illicit dealing in intoxicating liquor is in the same class with larceny, counterfeiting, forgery, obtaining money under false pretenses, and burglary, which are all committed with deliberation, in defiance of law, and for the ignoble motive of making a profit thereby. In all such cases it is competent to prove intent by showing matters of like nature, before or after the offense."

Evidence of prior offenses was likewise held competent in *State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535, decided by this Court 1 September 1976. See also: *State v. Smoak*, 213 N.C. 79, 90, 195 S.E. 72 (1937); *State v. Flowers*, 211 N.C. 721, 192 S.E. 110 (1937); *State v. Batts*, 210 N.C. 659, 188 S.E. 99 (1936); *State v. Miller*, 189 N.C. 695, 128 S.E. 1 (1925).

[3] There was no error in permitting Mr. Sherwin to testify that the State's Exhibit No. 1, a diamond shown to have been purchased from the defendant by the State's witness Howell after the Sherwin burglary, was the same diamond taken from Mrs. Sherwin in the course of the burglary here in question. The contention of the defendant is that Mr. Sherwin, a dealer in diamonds for many years, was found by the court to be competent to testify as to "an opinion as to the weight of the stone," which qualification would not permit him to testify as to the identity of the stone. There is no merit in this contention.

One need not be an expert in order to be competent to testify that an article seen by him in the courtroom is the same article seen by him on a prior occasion. Difficulty of identification, inherent in the nature of the article, ordinarily would go only to the question of the weight to be given such evidence by the jury. In the present case, Mr. Sherwin's identification of the diamond introduced in evidence as State's Exhibit No. 1 was based in part upon its size, weight, color, and cut but pri-

marily upon his observing thereon a scratch which he had previously noted on the diamond in possession of his wife prior to the burglary. See: *State v. Bridgers,* 267 N.C. 121, 147 S.E. 2d 555 (1966) ; Stansbury, North Carolina Evidence, Brandis Revision, § 129.

A number of assignments of error made by the defendant are listed in his brief but no authority is cited and no argument made in support thereof. These assignments are deemed abandoned. Rule 28(a), Rules of Appellate Procedure, 287 N.C. 741.

The defendant assigns as error the action of the District Attorney in propounding certain questions to the State's witnesses Watkins and Devine and to the defendant himself on cross-examination. The record discloses that in each instance, save two, in which neither the question nor the answer elicited thereby was prejudicial, the court sustained the defendant's objection and, in one instance, instructed the jury to disregard the question and not consider it in the deliberations of the jury. No further ruling of the court with reference to these questions was requested by the defendant. We find no merit in this assignment of error.

There was no error in permitting the State's witness Watkins to testify on redirect examination that, after his arrest, he wrote certain letters, about which he was interrogated by the appellant's counsel on cross-examination, because he feared that otherwise it would be known that he intended to testify for the State and, to prevent him from doing so, he would be killed.

Our examination of the entire record shows no error prejudicial to the defendant. The evidence is ample, both as to the nature of the offense committed and as to the appellant's participation therein, to support the verdict.

No error.