STATE OF NORTH CAROLINA v. WHALEN CLARK

No. 45

(Filed 6 November 1979)

**Criminal Law § 96— photograph of defendant retrieved from police records—instruction to disregard testimony—defendant not prejudiced**

 The trial court did not err in denying defendant's motion for mistrial made after a police officer, in describing the procedure he followed when allowing a witness to make a photographic identification, testified that he had retrieved a photograph of defendant from police records, since such testimony did not tend to show that defendant had committed another distinct, separate offense; the jury was already aware that a second photograph existed because a witness had previously referred to it in her testimony; at no time in his testimony did the officer intimate that the photograph was obtained during the investigation of another criminal offense; the jury had no more reason to believe that the police had the second photograph of defendant as a result of a prior crime committed by him than that the police had simply made an additional photograph in the investigation of the crimes for which he was being tried; and defendant suffered no prejudicial error by the admission of the challenged testimony since the trial court instructed the jury to disregard the testimony.

 APPEAL by defendant from *Johnson, Judge*, 4 December 1978 Criminal Session of Superior Court, MECKLENBURG County.

 Upon indictments, proper in form, the defendant was tried and found guilty of second degree rape, first degree burglary, and felonious larceny. He was sentenced to imprisonment for life in the State's prison on the charge of first degree burglary, to imprisonment for not less than 15 nor more than 30 years on the charge of second degree rape and to imprisonment for not less than 2 nor more than 8 years on the charge of felonious larceny.

 Evidence for the State tended to show that Cenie Alexander, a 22 year old woman, resided in an apartment on McAlway Road in Charlotte on Friday, 25 August 1978. She retired for bed around 10:30 p.m. Her windows and doors were locked. Sometime later she was awakened by a man who was standing at the foot of the bed and who yelled at her. She observed the man for about two seconds as he leaped upon her while holding an afghan in his hands. All the lights were out but the room was illuminated by an outside street light about 25 yards from her window. They struggled and assailant began choking her. In the struggle both fell to

the floor. She was having trouble breathing and could make no sound, so she went limp to have him cease choking her. He then had sexual intercourse with her against her will. This lasted for approximately five minutes. Assailant then left through the front door which he left standing open. Ms. Alexander got up and discovered that the front door was open and that entry had been gained by cutting through the glass of the kitchen window. She also noticed that her roommate's Panasonic color television set was missing. Neither she nor her roommate had given defendant permission to enter the apartment or take the television set which was valued at $250.00.

Ms. Alexander called her mother and her sister who came with the police. She thereafter gave police a description of her assailant and she was examined at Charlotte Memorial Hospital where it was determined that semen was present in her vagina.

Ms. Alexander, on 31 August 1978, selected the defendant's picture as her assailant from among a group of six photographs. She also identified another picture of the defendant. On 6 September 1978, she picked the defendant out of a lineup of men of similar size and body weight who were wearing the same clothing.

Meanwhile, the Saturday after the rape, 26 August 1978, a neighbor, Emmett Boyd, found the missing television set under some cardboard in a wooded area behind the apartment complex. He and his brother turned the TV over to the police suspecting that it was stolen. On Monday, 28 August 1978, another neighbor, James Ellis, observed the defendant looking under the cardboard and around the area where the missing television had been found. Ellis knew about the found TV set, and so became immediately suspicious. He and his roommate followed the defendant to his car and both took down the make, color and license plate number of defendant's car. Ellis later selected the defendant's picture from a photographic lineup and picked the defendant out of a live lineup.

Defendant's sole evidence was the testimony of his wife who stated that he was at home on the night in question. She also testified that when she told him the police were looking for him, he remained on his job and at his residence and made no attempt to flee.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas F. Moffitt and Special Deputy Attorney General David S. Crump for the State.*

*Keith M. Stroud for the defendant.*

CARLTON, Justice.

The sole question presented on this appeal is whether the trial court committed error in denying defendant's motion for mistrial after a police officer testified that he had retrieved a photograph of defendant from police records, the defendant not having testified. We find no prejudicial error.

Investigator Thomas A. Gaughen of the Charlotte Police Department, while testifying as one of the State's lead witnesses, was describing the procedure he followed when he showed photographs of various men to Jim Ellis. Ellis was attempting to identify the man he had seen searching for the TV set the Monday after the rape. During the photographic lineup, the officer testified that Ellis had pointed to the picture of the defendant and stated that he was reasonably certain this was the individual he had seen but that he would not make a positive identification unless he was able to see a photograph that showed more of defendant's body. After this testimony, the prosecuting attorney asked Officer Gaughen what he had done at that point and Gaughen replied, "I was able to secure a second photograph *from the police files of the defendant.*" (Emphasis added.)

Defendant's counsel immediately objected, and made motions to strike and for a mistrial. The jury was excused from the courtroom and the trial judge heard arguments from counsel. Upon the jury's return to the courtroom, the trial judge stated to them, "The jury is to disregard the last remark made by this witness with respect as to retrieving a photo of the defendant. You are not to give that any weight or consideration in your deliberations in this matter."

Defendant now argues that the trial court's failure to allow his motion for mistrial violates the rule enunciated in *State v. Mc-Clain*, 240 N.C. 171, 81 S.E. 2d 364 (1954), and reiterated in numerous decisions, that the State may not, over objection of defendant, introduce evidence that accused has committed

another independent criminal offense. As more completely stated by Justice Lake in *State v. Duncan*, 290 N.C. 741, 228 S.E. 2d 237 (1976):

> The general rule is that in a prosecution for a particular crime the State, prior to the defendant's taking the witness stand and thus placing his general character and credibility in issue, cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. . . . However, as there noted, numerous exceptions to this rule are also well established. One is that such evidence may be admissible to identify the defendant as a perpetrator of the crime with which he is presently charged. Another is that such evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission.

*Id.* at 744-45, 228 S.E. 2d at 239.

Defendant argues that allowing the testimony in question was tantamount to testifying that defendant had committed another distinct, independent, or separate offense and that the statement does not fall within any of the exceptions hereinabove noted.

We agree with the defendant that the facts here presented do not fall within any of the exceptions noted. However, we disagree that the questioned testimony violated the rule. We do not find that the testimony tended to show "that the accused has committed another distinct, independent, or separate offense." The jury was already aware that a second photograph of defendant existed because Ms. Alexander had previously referred to it in her testimony. At no time in his testimony did Officer Gaughen intimate that the photograph was obtained during the investigation of another criminal offense. The jury had no more reason to believe that the police had the second photograph of defendant as a result of a prior crime committed by him than that the police had simply made an additional photograph in the investigation of the crimes for which he was being tried.

The situation here presented is not unlike that presented in *State v. Pitt*, 248 N.C. 57, 102 S.E. 2d 410 (1958). There, a State probation officer was allowed to testify both that he was a probation officer and that a certain admission was made to him by the defendant. The defendant moved for a mistrial on the ground that allowing such testimony was equivalent to telling the jury that defendant had been convicted of another criminal offense and presumably was on probation for that crime. The Court in *Pitt* rejected the defendant's contention. We agree with their reasoning that to conclude that the jury would assume that the defendant had a prior criminal conviction as a result of the questioned testimony would be "entirely speculation."

Furthermore, even if the jury, by some stretch of the imagination, had inferred the photograph came from a file of a separate crime, numerous decisions of this Court sustain our view that defendant suffered no prejudicial error by the admission of the challenged testimony when the trial court properly instructed the jury to disregard the testimony. In *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974), *death sentence vacated*, 428 U.S. 903, 96 S.Ct. 3205, 49 L.Ed. 2d 1206 (1976), an F.B.I. witness inferred in his testimony that the defendant had escaped from prison. Defendant's counsel immediately moved for mistrial and the motion was denied. This Court found no prejudicial error because the trial court, as here, properly instructed the jury not to consider the statement.

In *State v. McKethan*, 269 N.C. 81, 152 S.E. 2d 341 (1967), defendant was on trial for rape and kidnapping. A witness, in answer to defense counsel's question about his knowledge of defendant prior to the incident, replied that he had known the defendant "for other sex offenses." Again, the court promptly instructed the jury not to consider the statement and this Court held the occurrence afforded no grounds for a mistrial.

In *State v. Robbins*, 287 N.C. 483, 214 S.E. 2d 756 (1975), *death sentence vacated*, 428 U.S. 903, 96 S.Ct. 3208, 49 L.Ed. 2d 1208 (1976), a police officer testified that he went to the Charlotte Police Department to obtain the defendant's address. He stated that the address was obtained "from an arrest record of [defendant]." Defendant objected and the court, sustaining the objection, instructed the jury to disregard any mention of the arrest record. Again, this Court found no prejudicial error, citing the rules that

"[O]ur system for the administration of justice through trial by jury is based upon the assumption that the trial jurors are men of character and of sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so." *State v. Ray*, 212 N.C. 725, 194 S.E. 482 (1938). . . . "Ordinarily where the evidence is withdrawn no error is committed." *State v. Strickland*, 229 N.C. 201, 49 S.E. 2d 469 (1948).

Nothing in the record before us indicates these jury members were other than people of character and intelligence. Furthermore, even if the judge had failed to properly instruct them, we do not feel the testimony would have been prejudicial error. The record before us discloses an overwhelming case of guilt. Both Ms. Alexander and Mr. Ellis promptly and positively identified the defendant. Blood type, hair samples, license tags and circumstances pointed unerringly to his guilt. It is inconceivable to us that the jury could have reached a different result had the inadvertent statement by the witness not been made. We therefore find beyond a reasonable doubt that the evidence, even if it had been improperly admitted, would have been harmless error. *See, e.g., Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed. 2d 340 (1972); *State v. Robbins, supra*. We have consistently held that technically incompetent evidence is harmless unless it is made to appear that the defendant was prejudiced thereby and that a different result likely would have ensued had the evidence been excluded. *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971), *cert. denied*, 404 U.S. 1023, 92 S.Ct. 699, 30 L.Ed. 2d 673 (1972), and authority cited therein. Defendant's sole assignment of error is overruled.

We deem it appropriate to comment that the investigative techniques employed by the Charlotte Police Department in this case were of the finest professional quality, that the case was tried, prosecuted and defended according to the highest professional legal standards, that defendant's constitutional rights were fully accorded at every stage of the proceeding and that the diligence of the prosecutrix's neighbors was laudable.

In the trial below, defendant had a fair trial, free from any prejudicial error.

No error.