State v. Trueblood

---

STATE OF NORTH CAROLINA v. SEQUOYAH E. TRUEBLOOD

No. 7912SC1173

(Filed 6 May 1980)

**1. Criminal Law § 34.8— defendant's guilt of other offenses—admissiblity to show plan or design**

In a prosecution for possession and sale of cocaine and conspiracy to sell cocaine, the trial court did not err in admitting evidence which set out chronologically the meeting of a law enforcement agent with defendant, the meetings of the conspirators, their trips to N.Y. to purchase cocaine, and delivery of that cocaine, though such evidence did tend to show the commission of prior criminal acts by defendant, since such evidence was admissible to show the series of transactions carried out by defendant and his coconspirators in pursuance of their plan and design to sell and deliver cocaine.

**2. Narcotics § 3.3— substance identified as cocaine—witness not qualified as expert—defendant not prejudiced**

The trial court did not err in permitting a witness to refer to a substance as cocaine without qualification as an expert, since defendant did not request a finding by the court with respect to the witness's expertise and gave no ground for his general objection, and defendant was not prejudiced in view of the subsequent testimony of a chemist that the substance was indeed cocaine.

**3. Narcotics § 4— conspiracy to sell cocaine—sufficiency of evidence**

The trial court properly submitted to the jury an issue of conspiracy to sell cocaine where the indictment charged the date of the conspiracy as "on or about" 5 March 1979, and the evidence tended to show that defendant, his coconspirators and a law enforcement agent met on several occasions from January through March 1979 for the purpose of discussing the sale of cocaine by defendant to the agent; several sales did take place; on 5 March the agent contacted defendant by calling a coconspirator; and on 6 March defendant and the agent met, and the agent purchased 1¼ ounces of cocaine.

APPEAL by defendant from *Braswell, Judge.* Judgment entered 20 July 1979, Superior Court, CUMBERLAND County. Heard in the Court of Appeals 23 April 1980.

Defendant, a Major in the United States Army stationed at Fort Bragg, was charged with and convicted of possession with intent to sell and sale of cocaine in violation of G.S. 90-95(a)(1) and conspiracy to sell cocaine in violation of G.S. 90-98, and appeals from judgments entered on the verdicts of the jury.

Facts necessary for decision will be set out in the opinion.

---

---

*Attorney General Edmisten, by Assistant Attorney General Daniel C. Oakley, for the State.*

*Coolidge, Clarke, Hutchens and Waple, by Mark L. Waple, and Barfield and Canders, by K. Douglas Barfield, for defendant appellant.*

MORRIS, Chief Judge.

Defendant brings forward and argues in his brief four assignments of error. The first is directed to the denial by the court of defendant's motion to suppress all evidence against defendant which was, according to defendant, taken in violation of the Posse Comitatus Act. This question was fully discussed and decided against defendant in *State v. Trueblood,* 46 N.C. App. 541, 265 S.E. 2d 662 (1980). No useful purpose would be served by repeating that discussion here. The resolution of the question against defendant in that companion case involving other transactions and charges resulting from the same investigation is decisive and controlling here. This assignment of error is overruled.

[1] The indictment charged that defendant, on or about 5 March 1979, conspired with one Im Suk Dawson and others to sell and deliver cocaine. Over defendant's objections, the court admitted evidence which set out chronologically the meeting of Agent Allcox with defendant, the meetings of the conspirators, their trips to New York to purchase cocaine and then the delivery of that cocaine. Defendant assigns as prejudicial error the admission of this evidence contending that the evidence proved the commission of prior criminal acts by defendant and allowed the State to inject into the trial evidence of defendant's character when he had not raised the issue of character. It is quite true that the evidence tends to show the commission of crimes by defendant and results in a showing of a bad character. Without question the evidence was prejudicial as is true of most evidence against a defendant charged with crime. Nevertheless the court did not commit reversible error in admitting the evidence.

In his discussion of the subject, Professor Brandis, in 1 Stansbury's N. C. Evidence § 91 (Brandis rev. 1973), p. 288, said:

This is commonly supposed to be a somewhat difficult and complex field, marked out by a general rule of exclusion and a series of exceptions. It is submitted, however, that the rule is in fact a simple one which, when accurately stated, is subject to no exceptions: Evidence of other offenses is inadmissible on the issue of guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; *but if it tends to prove any other relevant fact it will not be excluded merely because it shows him to have been guilty of an independent crime.* (Emphasis added.)

Here the evidence to which defendant objected was clearly admissible to prove "the existence of a plan or design to commit the offense charged. . . ." *Id.* at § 92, p. 297. *See also* 1 Jones on Evidence § 162 (5th ed. 1958). The evidence was but a part of a series of transactions carried out by this defendant and his co-conspirators in pursuance of their plan and design to sell and deliver cocaine. In *State v. Duncan*, 290 N.C. 741, 228 S.E. 2d 237 (1976), defendant was charged with burglary in the first degree and common law robbery. His primary contention on appeal was that State's witnesses were allowed to testify, over defendant's objection, with respect to their association with defendant in the commission of other breaking and enterings and thefts in this State and others over a period of two years prior to the occurrence for which defendant was tried. The Court, in finding no error in the admission of the testimony, noted that the general rule prohibits the offering of evidence tending to show that the accused has committed other crimes where he has not taken the stand and thereby placed his general character and credibility in issue.

However, . . ., numerous exceptions to this rule are also well established. One is that such evidence may be admissible to identify the defendant as a perpetrator of the crime with which he is presently charged. Another is that such evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission.

290 N.C. at 745, 228 S.E. 2d at 239. *See also State v. Forney*, 38 N.C. App. 703, 248 S.E. 2d 747 (1978), and cases there cited. This assignment of error is overruled.

It is difficult to ascertain the basis of defendant's assignment of error No. 3. We find the following in the Record under assignment of error No. 3: "For failure of the Court to sustain defendant's objections and grant defendant's motions to strike conclusionary testimony and incompetent testimony concerning the exact nature of suspected controlled substances." The assignment of error refers to exception Nos. 5, 10, 14, 19, 21 (R. p. 31, 35, 37, 39, 40). On R. pp. 30-31, we find the following:

> (Over the objection of Mr. Barfield which was overruled by the Court.) Exception No. 5.

> Mr. Allcox stated that on January 29th he met with Trueblood and Dawson at the restaurant. Christopher Russell accompanying Agent Allcox to the restaurant. Major Trueblood was seated beside me in the booth. During the meal the conversation with Chris Russell, Major Trueblood asked where was the cocaine. Chris Russell stated that the two ounces of cocaine was in his boot. At this time Chris Russell stomped his foot under the booth where I and Major Trueblood were seated and Major Trueblood removed the plastic bag containing 2 ounces of cocaine. At that time he handed me the package containing the cocaine and I put it in my pocket. We then left the restaurant and myself, Chris Russell, Major Trueblood and Im Suk Dawson got into my vehicle. At that time I paid Major Trueblood the sum of fourteen hundred fifty dollars, twelve hundred of it was for marijuana he had given me on Friday. Two hundred and fifty was for the cocaine over three thousand dollars I had paid him on Friday.

Rule 9(c)(1), North Carolina Rules of Appellate Procedure, provides:

> Where error is assigned with respect to the admission or exclusion of evidence, the question and answer form shall be utilized in setting out the pertinent questions and answers",

and Rule 10(b)(1) requires that

[e]ach exception shall be set out immediately following the record of judicial action to which it is addressed and shall identify the action, without any statement of grounds or argumentation, by any clear means of reference."

It is abundantly clear that defendant has failed to comply with these rules.

[2]  If defendant's position is that at these places in the trial the court allowed the witness to refer to a substance as cocaine without qualification as an expert, the defendant did not request a finding by the court with respect to the witness's expertise and gave no ground for his general objection. In any event, no prejudice resulted in view of the subsequent testimony of the chemist that the substance was indeed cocaine.

This assignment of error is without merit and overruled.

[3]  Finally, defendant urges that the court should have granted his motion to dismiss the conspiracy charges because there was insufficient evidence to go to the jury. This assignment of error is also without merit. We note that defendant concedes that there "is evidence of an alleged conspiracy and sale of controlled substances occurring around January 26, 1979, and January 29, 1979," but he contends this will not support an alleged conspiracy occurring on 5 March 1979. The indictment sets the date of the alleged conspiracy as "on or about" 5 March 1979.

The evidence for the State is briefly summarized as follows:

Agent Allcox first met defendant on 26 January 1979, having been introduced to defendant by Christopher Russell. At that meeting Allcox discussed with defendant, Russell, and Costa Lampros the purchasing of cocaine. Defendant stated that he was going to New York that weekend to buy cocaine. Allcox indicated an interest in buying at least two ounces and agreed to let defendant have $3,000 with which to buy the cocaine with defendant providing four pounds of marijuana as collateral. When defendant returned from New York on Sunday, Allcox would receive the two ounces of cocaine and pay defendant $1,200 for the marijuana. On Monday, 29 January 1979, Allcox met defendant, Russell, and Im Suk Dawson. Defendant delivered two ounces of cocaine to Allcox and Allcox paid defendant $1,200 for the marijuana plus $250 additional for the cocaine. Defendant told Allcox that he,

Russell, and Dawson had left on Sunday for Washington, D.C., by car. The weather was bad so he and Dawson took a commercial airplane to New York from Washington and Russell and Lampros drove the car back to North Carolina. Defendant purchased the cocaine in New York and he and Dawson returned to North Carolina by airplane arriving at Raleigh-Durham Airport where they were met by Russell and Lampros, returning to Fayetteville by car.

On 16 February 1979, Allcox again met with defendant and Dawson. At that time another purchase of cocaine was arranged. Allcox furnished $3,400 to defendant who stated he was planning to go to New York that weekend, get more cocaine, and return to Fayetteville. On 20 February, Allcox met with defendant who told him that Lampros and defendant had gone to Washington, picked up Russell, and proceeded to New York where he purchased cocaine. They then returned to Washington, dropped off Russell, and defendant and Lampros returned to Fayetteville. He had two and one-fourth ounces of cocaine and Allcox took it all. The price agreed upon resulted in Allcox's owing defendant $550. He had only $400 at that time. He paid that to defendant and agreed to pay the balance "on the next deal". After this meeting, Allcox attempted to contact defendant. On 1 March, defendant contacted Allcox by phone. On 5 March Allcox contacted defendant by calling Dawson. He and defendant met on 6 March and defendant stated that he had been to New York that weekend and had bought cocaine. Allcox, at that meeting, bought one and one-fourth ounces and paid $2,500 therefor.

Lampros testified that he was introduced to defendant by Russell in January of 1979 and associated with defendant until March of 1979. He testified with respect to the trip to New York by way of Washington when it was agreed that he and Russell would drive the car back and meet defendant and Dawson at the Raleigh-Durham Airport. This they did, and on the trip from Raleigh to Fayetteville, the four of them "discussed cocaine and the Major related what had happened in New York to Chris and myself." Dawson also participated in the conversation. When they got back to Fayetteville, they discussed "how the white powder substance would be weighed and in what different weights it would be weighed out" and the distribution of it. It was decided that some of the "coke" was for Lee Allcox. During February of

1979, he, defendant, Russell, and Dawson were all present on three or four occasions when general discussions of "coke" and the purchase of it in New York were had. Lampros testified in detail about a second trip to New York to purchase cocaine in which he, defendant, and Russell participated. He further testified to a discussion with defendant in late February or early March at a house in which defendant and Dawson were staying. They discussed defendant's purchase of "coke" and the possibility of Allcox's being an agent. Dawson was "in and out" of the room.

The evidence is clearly sufficient to support a guilty verdict.

The defendant has had a fair and impartial trial, free from prejudicial error.

No error.

Judges PARKER and WELLS concur.