STATE OF NORTH CAROLINA v. JAMES BRANTLEY OXENDINE

No. 16

(Filed 2 June 1981)

**1. Criminal law § 92.4— two charges against one defendant—consolidation proper**

The trial court did not abuse its discretion in granting the State's motion to consolidate murder and assault charges for trial where evidence tended to show that both offenses were committed within a short interval of time; the murder victim was killed between 8:00 p.m. and 10:00 p.m. on 30 August 1979 and the assault victim was assaulted at approximately 4:00 a.m. on 31 August 1979; the offenses were similar in nature in that each involved the shooting of a person with the intent to kill; it appeared from the evidence that defendant committed both offenses after consuming a considerable amount of alcohol and drugs, indicating that the offenses were part of a series of transactions undertaken by defendant while under the influence of intoxicating substances; defendant confessed to the commission of both offenses in the same interview with law enforcement officers; the witnesses presented in both trials were substantially the same; and it would have been impractical and nearly impossible to present evidence of the events surrounding one offense without also presenting evidence tending to prove the other offense.

**2. Criminal Law § 85.2; Homicide § 15— firearms transaction record—no impeachment of defendant's character—admissibility of evidence**

There was no merit to defendant's contention that the trial court erred in allowing a State's witness to relate defendant's answers to questions listed on a firearms transaction record which defendant was required to fill out before purchasing a .22 caliber rifle, since the firearms transaction record which defendant filled out was relevant evidence to prove that defendant owned the weapon used to kill the murder victim, and the evidence did not tend to impeach defendant's character before defendant testified in his own behalf or introduced evidence of his good character as part of his defense.

**3. Criminal Law § 90— no impeachment of State's own witness**

In a prosecution of defendant for homicide and assault the trial court did not err in allowing a State's witness to answer the district attorney's ques-

tions concerning his prior convictions of bootlegging, and by these questions the State did not impeach its own witness, since the witness's testimony revealing his five prior convictions of bootlegging was not evidence tending to impeach his credibility, but was instead evidence corroborating his statement that defendant came to his home on the morning of the crimes to purchase beer because he knew the witness was involved in the illegal sale of alcoholic beverages, and the witness's statements were thus admissible as relevant evidence tending to prove the events which transpired on the day of the crimes.

**4. Criminal Law § 75.15 — confession — waiver of constitutional rights — effect of intoxication**

There was no merit to defendant's position that, because he was intoxicated from the consumption of alcohol and under the influence of drugs at the time of his statements, he was unable to comprehend the reading of his constitutional rights and incapable of intelligently waiving those rights, thus rendering subsequent statements inadmissible, since the only evidence tending to prove the quantity of alcohol and drugs which defendant had consumed was defendant's own testimony; defendant stated that, despite his condition, he was able to understand his constitutional rights as they were read to him before he made his first statement, except for his right to stop talking during the course of the interview and to request the presence of counsel; defendant was able to relate all the events which took place on the day of the statements in a degree of detail that was inconsistent with his contention that he was too intoxicated to make a knowing and intelligent waiver of his rights; it was uncontroverted that defendant consumed no alcohol or drugs for at least two hours prior to making his first statement and for at least six hours prior to his second statement; and all of the witnesses who observed defendant prior to and after his arrest stated that he was able to walk and carry on a normal conversation.

**5. Criminal Law § 86 — prior conviction of common law robbery — cross-examination proper**

In a prosecution of defendant for homicide and assault where defendant allegedly used a rifle to accomplish both crimes, the trial court did not err in allowing the district attorney to question defendant concerning his use of a screwdriver to threaten the victims of a previous robbery, since the questions were apparently designed to indicate to the jury that defendant was a person with a propensity to use a weapon; defendant eventually admitted that he had threatened his victims with a long screwdriver; and it thus appeared from the record that the questions were based on information properly submitted to the district attorney.

**6. Homicide § 21.5 — first degree murder — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a first degree murder prosecution where it tended to show that defendant shot his victim with a .22 caliber rifle; four days later defendant called the police and told them that the body of the victim could be found at the victim's mobile home; a police officer went to the designated trailer and discovered the victim's body; and on that same afternoon defendant was informed of his constitutional rights, signed a written waiver, and twice confessed to the murder.

**7. Grand Jury § 3.5— grand juror brother of murder victim—motion to quash indictment properly denied**

In a prosecution of defendant for first degree murder the trial court did not err in denying defendant's motions to quash the indictment against him and to declare a mistrial on the ground that one of the members of the grand jury which returned the indictments against him was the brother of the murder victim and a witness for the prosecution at defendant's trial, since, ordinarily, any interest in a particular prosecution other than a direct pecuniary interest will not disqualify a grand juror or justify an objection to an indictment in which he participates, and there was no evidence that the grand jury acted with malice, hatred, or fraud in returning the indictments against defendant.

DEFENDANT appeals from judgment of *McKinnon, J.*, entered at the 18 February 1980 Session of Superior Court, ROBESON County.

Defendant was tried upon indictments, proper in form, charging him with first degree murder and with felonious assault with a deadly weapon, with the intent to kill, inflicting serious injuries not resulting in death. The jury found defendant guilty of both offenses. Since the jury could not unanimously agree within a reasonable time whether to impose the death penalty or a sentence of life imprisonment for defendant's first degree murder conviction, the trial judge imposed a sentence of life imprisonment pursuant to G.S. 15A-2000(b). Defendant was also sentenced to imprisonment for a minimum of fifteen years and a maximum of twenty years for his conviction of felonious assault under G.S. 14-32(a), to be served concurrently with his life imprisonment sentence. Defendant appeals from the trial court's judgment sentencing him to life imprisonment for first degree murder as a matter of right pursuant to G.S. 7A-27(a). We allowed defendant's motion to bypass the Court of Appeals on the felonious assault charge on 10 December 1980.

The State's evidence tended to show the following: At approximately 3:30 p.m. on 30 August 1979, defendant met Anthony Oxendine and the two spent the afternoon and evening hours of that day together, driving in Anthony Oxendine's automobile and consuming a substantial amount of beer. Defendant purchased a .22 caliber rifle from a Lumberton merchant at about 6:30 p.m. on that day. Defendant and Anthony Oxendine then went to Anthony's mobile home, where they drank more beer until Anthony decided to go to bed. After Anthony was asleep, defendant

retrieved his .22 rifle from the back seat of Anthony's car, returned to the trailer, and shot Anthony twice. Dr. Larry Tate, a pathologist in the Chief Medical Examiner's office, examined the body and testified that Anthony was killed by one or both of the .22 caliber bullets found in the body.

After shooting Anthony, defendant took Anthony's car and drove to a convenience store, arriving at approximately 10:00 p.m. that night. Defendant argued with several individuals outside the convenience store and an altercation developed, during which the .22 caliber rifle was taken from him and destroyed. Defendant left the store area without the broken rifle.

Bunyan Lowery testified for the State that defendant awakened him at his home at about 4:00 a.m. on 31 August 1979 and asked to purchase beer. Defendant was carrying a twelve gauge pump shotgun at that time. After paying for the beer, defendant shot Mr. Lowery twice, hitting him in the back and in the right arm, inflicting serious injuries.

Between 12:10 and 12:15 p.m. on 2 September 1979, defendant called the Pembroke Police Station and talked to Sergeant Ray Strickland of the Robeson County Sheriff's Department. Sergeant Strickland testified that defendant asked if a warrant for his arrest had been issued for the shooting of Bunyan Lowery. When Sergeant Strickland informed him that such a warrant had been issued, defendant stated that he wished to "turn himself in" and gave directions as to his whereabouts. He further stated that the body of Anthony Oxendine could be found at Anthony's mobile home in the Harris Trailer Park. Sergeant Strickland went to the designated trailer and discovered Anthony's body in a deteriorated and putrified condition.

Defendant was apprehended and taken to the Robeson County Sheriff's Department at approximately 2:00 p.m. on 2 September 1979, at which time he was informed of his constitutional rights and signed a written waiver stating that he understood these rights and agreed to waive them. He was then interviewed by Detective Luther H. Sanderson, during which he gave a written and verbal statement admitting that he killed Anthony Oxendine on 30 August 1979 and shot Bunyan Lowery on 31 August 1979. Defendant was interviewed by Detective Jimmy Maynor at about 6:00 p.m. on 2 September 1979, at which time he

again signed a written waiver of his constitutional rights and confessed to both offenses.

Defendant testified in his own behalf, admitting that he was with Anthony Oxendine during the afternoon and evening of 30 August 1979 and that he purchased a .22 caliber rifle on that day, but denying any participation in or knowledge of the killing of Anthony Oxendine. He stated that he took Anthony's car after Anthony went to sleep in order to drive to a store and purchase more beer. After arguing with several individuals at a convenience store, during which his rifle was smashed and destroyed, defendant stated that he was afraid of being harmed and drove to his father's house to borrow a shotgun. He obtained the shotgun and went to Bunyan Lowery's residence to buy beer. He claimed that when he attempted to carry the beer and the shotgun to Anthony's car, the shotgun slipped from his arms and struck the ground, accidentally discharging and injuring Mr. Lowery. He fled from the scene because Mr. Lowery had calld for assistance and he was afraid that someone would hurt him.

After fleeing from the Lowery residence on 31 August 1979, defendant testified that he spent the next two days traveling in Anthony Oxendine's automobile in the southeastern area of North Carolina, continually consuming a large quantity of alcohol and drugs, until he phoned the Pembroke Police Station shortly after noon on 2 September 1979. He stated that he was under the influence of alcohol and drugs when he called the police station and when he was interviewed by detectives at 2:00 p.m. and 6:00 p.m. on that day, to the point that he did not remember making any statements concerning his involvement in the two offenses. He admitted going to Anthony Oxendine's mobile home on 1 September 1979 and discovering his body in a decomposed condition, and thus he was able to tell law enforcement officers where to find the body when he called the police station on 2 September 1979. Defendant presented several witnesses who testified to his whereabouts during the entire time period between 30 August and 2 September 1979. He also presented evidence of his intoxicated condition at the time he called the Pembroke Police Station on 2 September 1979.

Other facts pertinent to the decision will be related in the opinion below.

*John Wishart Campbell for defendant.*

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General W. A. Raney, Jr., for the State.*

COPELAND, Justice.

Defendant argues four assignments of error on appeal. We have carefully considered each assignment and conclude that the trial court committed no error which would entitle defendant to a new trial.

[1] Defendant first contends that the trial court erred in granting the State's motion to consolidate the two charges against him for trial. G.S. 15A-926(a) authorizes the consolidation of offenses and provides in pertinent part:

> "Two or more offenses may be joined . . . for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan."

This Court has held that in deciding whether two or more offenses should be joined for trial, the trial court must determine whether the offenses are *"so separate in time and place* and *so distinct in circumstances* as to render the consolidation unjust and prejudicial to defendant." *State v. Johnson,* 280 N.C. 700, 704, 187 S.E. 2d 98, 101 (1972). Thus, there must be some type of "transactional connection" between the offenses before they may be consolidated for trial. *State v. Powell,* 297 N.C. 419, 255 S.E. 2d 154 (1979); *State v. Greene,* 294 N.C. 418, 241 S.E. 2d 662 (1978). In addition, the trial judge's exercise of discretion in consolidating charges will not be disturbed on appeal absent a showing that the defendant has been denied a fair trial by the order of consolidation. *State v. Phifer,* 290 N.C. 203, 225 S.E. 2d 786 (1976), *cert. denied.,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed. 2d 573 (1977); *State v. Taylor,* 289 N.C. 223, 221 S.E. 2d 359 (1976).

We find the murder and assault charges involved in the present action sufficiently similar in time and circumstances to justify the trial judge's order consolidating them for trial. The State's evidence tended to show that both offenses were committed within a short interval of time; Anthony Oxendine was killed between 8:00 p.m. and 10:00 p.m. on 30 August 1979 and Bunyan

Lowery was assaulted at approximately 4:00 a.m. on 31 August 1979. The offenses were similar in nature, in that each involved the shooting of a person with the intent to kill. It appeared from the evidence that defendant committed both offenses after consuming a considerable amount of alcohol and drugs, indicating that the offenses were part of a series of transactions undertaken by defendant while under the influence of intoxicating substances. Defendant confessed to the commission of both offenses in the same interview with law enforcement officers. The witnesses to be presented in both trials were substantially the same. It would have been impractical and nearly impossible to present evidence of the events surrounding one offense without also presenting evidence tending to prove the other offense. Defendant has failed to show that the consolidation unjustly hindered him or deprived him of his ability to present a defense on either charge. Consequently, we hold that the trial court did not abuse its discretion in granting the State's motion to consolidate the murder and assault charges for trial and defendant's assignment of error is overruled.

[2] By his second assignment of error, defendant contests the trial court's admission, over his objection, of several unrelated elements of evidence. He first argues that the trial court erred in allowing State's witness Luther Thorndyke to relate defendant's answers to questions listed on the firearms transaction record which defendant was required to fill out before purchasing a .22 caliber rifle on 30 August 1979. Defendant contended that he purchased the rifle as a birthday gift for his son. Mr. Thorndyke was the manager on duty at the time defendant bought the weapon. It is defendant's belief that by admitting this testimony, the trial court permitted the prosecution to introduce evidence tending to impeach defendant's character before defendant testified in his own behalf or introduced evidence of his good character as part of his defense.

Evidence of an accused's character is not admissible for any purpose if the accused has neither testified nor introduced evidence of his character in his own behalf. *State v. Sanders,* 295 N.C. 361, 245 S.E. 2d 674 (1978); *State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978). However, the State may produce evidence relevant for some other purpose which incidentally bears upon the character of the accused. *State v. Jones,* 229 N.C. 276, 49 S.E.

2d 463 (1948); 1 Stansbury's North Carolina Evidence § 104 (Brandis Rev. 1973). The firearms transaction record which defendant filled out upon purchasing a .22 caliber rifle was relevant evidence to prove defendant owned the weapon used to kill Anthony Oxendine. Furthermore, we fail to understand how defendant was prejudiced by the witness' recitation of the questions on the form and defendant's answers thereto. The questions required that defendant reveal any prior criminal convictions, addictions to alcohol or drugs, or history of mental illness. Defendant gave no answer which could be interpreted by the jury as reflecting adversely on his character; in fact, his answers tended to prove his good character. Therefore, any technical incompetency in Mr. Thorndyke's testimony was favorable to defendant, and the admission of the testimony is not reversible error. *State v. Clark,* 298 N.C. 529, 259 S.E. 2d 271 (1979); *State v. Logner,* 297 N.C. 539, 256 S.E. 2d 166 (1979).

[3] Defendant next argues that the trial court erred in allowing State's witness Bunyan Lowery to answer the district attorney's questions concerning his prior convictions of bootlegging. Defendant complains that by these questions the State was permitted to impeach its own witness, which practice is, as a general rule, prohibited in this jurisdiction. *State v. Garrison,* 294 N.C. 270, 240 S.E. 2d 377 (1978); *State v. Scott,* 289 N.C. 712, 224 S.E. 2d 185 (1976); *State v. Wright,* 274 N.C. 380, 163 S.E. 2d 897 (1968). We find that Mr. Lowery's testimony revealing his five prior convictions of bootlegging was not evidence tending to impeach his credibility, but evidence corroborating his statement that defendant came to his home at 4:00 a.m. on 31 August 1979 to purchase beer because he knew Mr. Lowery was involved in the illegal sale of alcoholic beverages. Mr. Lowery's statements were thus admissible as relevant evidence tending to prove the events which transpired on 31 August 1979, and defendant's contentions to the contrary are without merit and overruled.

[4] Defendant further maintains that the trial court erred in denying his motion to suppress his written and verbal statements made to law enforcement officers subsequent to his arrest on 2 September 1979. It is his position that, because he was intoxicated from the consumption of alcohol and under the influence of drugs at the time of his statements, he was unable to comprehend the reading of his constitutional rights and incapable of in-

telligently waiving these rights, rendering his subsequent statements inadmissible under the holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

When the State offers a defendant's confession into evidence and defendant objects, the trial court must conduct a *voir dire* hearing to determine its admissibility. *State v. Jones*, 294 N.C. 642, 243 S.E. 2d 118 (1978). The trial judge's finding of fact that an inculpatory statement was freely and voluntarily given is conclusive on appeal when supported by competent evidence presented at the *voir dire* hearing. *State v. Horton*, 299 N.C. 690, 263 S.E. 2d 745 (1980); *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979). The fact that defendant was intoxicated at the time of his confession does not preclude the conclusion that defendant's statements were freely and voluntarily given. An inculpatory statement is admissible unless the defendant is so intoxicated that he is unconscious of the meaning of his words. *State v. McClure*, 280 N.C. 288, 185 S.E. 2d 693 (1972); *State v. Logner*, 266 N.C. 238, 145 S.E. 2d 867, *cert. denied*, 384 U.S. 1013, 86 S.Ct. 1983, 16 L.Ed. 2d 1032 (1966).

In the present case, the trial judge conducted a hearing and found no evidence that defendant was unconscious or exhibiting conduct amounting to a mania at the time of his statements to Detectives Sanderson and Maynor at 2:00 p.m. and 6:00 p.m. on 2 September 1979. The court therefore concluded that defendant's statements were voluntarily made. We find the trial court's conclusion supported by competent evidence presented on *voir dire*. The only evidence tending to prove the quantity of alcohol and drugs which defendant had consumed was defendant's own testimony. Defendant further stated that despite his condition, he was able to understand his constitutional rights as they were read to him before he made his first statement at 2:00 p.m., except for his right to stop talking during the course of the interview and request the presence of counsel. Defendant was able to relate all the events which took place on 2 September 1979 in a degree of detail that is inconsistent with his contention that he was too intoxicated to make a knowing and intelligent waiver of his rights. It is uncontroverted that defendant consumed no alcohol or drugs for at least two hours prior to making his first statement and for at least six hours prior to his second statement. All of the witnesses who observed defendant prior to and after

his arrest stated that he was able to walk and carry on a normal conversation. After considering all the evidence presented at the hearing we find that the trial judge properly found a free, voluntary waiver of defendant's rights consistent with the requirements set forth in *Miranda v. Arizona, supra,* as reiterated by this Court in *State v. Connley,* 297 N.C. 584, 256 S.E. 2d 234, *cert. denied,* 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed. 2d 327 (1979), and correctly denied defendant's motion to suppress.

**[5]** Defendant next argues that the trial court erred in allowing the district attorney, over defendant's objection, to question defendant on cross-examination about the details of his prior conviction of common law robbery. When the defendant in a criminal action elects to testify in his own behalf, this Court has consistently held that he may be questioned on cross-examination, for impeachment purposes, about prior specific criminal actions or degrading conduct, provided that the questions are asked in good faith. *State v. Royal,* 300 N.C. 515, 268 S.E. 2d 517 (1980); *State v. Herbin,* 298 N.C. 441, 259 S.E. 2d 263 (1979); *State v. McQueen,* 295 N.C. 96, 244 S.E. 2d 414 (1978). Defendant contends that the questions asked in this case concerning defendant's use of a screwdriver to threaten the victims of a previous robbery were not in good faith and should have been excluded by the trial judge. We disagree. The questions were apparently designed to indicate to the jury that defendant was a person with a propensity to use a weapon. Defendant eventually admitted that he had threatened his victims with a long screwdriver, thus it appears from the record that the questions were based on information properly submitted to the district attorney. It is a matter within the sound discretion of the trial judge to determine whether cross-examination by the State is unfair or in bad faith, and his decision will not be disturbed on appeal absent an abuse of that discretion. *State v. Herbin, supra; State v. Mayhand,* 298 N.C. 418, 259 S.E. 2d 231 (1979); *State v. Currie,* 293 N.C. 523, 238 S.E. 2d 477 (1977). We find no abuse of discretion in the trial judge's decision to overrule defendant's objection to the district attorney's questions concerning his prior robbery offense, and defendant's assignment of error is overruled.

**[6]** By his third assignment, defendant contends that the trial court erred in denying his motion to dismiss the first degree murder charge on the grounds that the evidence was insufficient

to sustain a conviction on that charge. Defendant argues that his confessions to law enforcement officers on 2 September 1979 were improperly admitted, and without these statements there was not enough evidence of first degree murder for the charge to be submitted to the jury. Since we have held that defendant's statements were freely and voluntarily given, and therefore correctly admitted, we likewise find defendant's third assignment of error without merit and overruled.

[7] Defendant argues under his final assignment that the trial court erred in denying his motions to quash the indictments against him and to declare a mistrial on the ground that one of the members of the grand jury which returned the indictments against him was the brother of Anthony Oxendine, the murder victim, and a witness for the prosecution at defendant's trial. As a general rule, the fact that a member of the grand jury who actively participated in returning a bill of indictment against defendant was related to the victim of the crime charged does not disqualify that person from serving as a grand juror. *State v. Sharp,* 110 N.C. 604, 14 S.E. 504 (1892). *See also Southward v. State,* 293 So. 2d 343 (Miss. 1974); *Lascelles v. State,* 90 Ga. 347, 16 S.E. 945 (1892), *aff'd* 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 549 (1893). Nor is a bill of indictment rendered objectionable when one of the members of the grand jury subsequently testifies at trial for the prosecution. *State v. McDonald,* 73 N.C. 346 (1875); *State v. Pitt,* 166 N.C. 268, 80 S.E. 1060 (1914). Ordinarily, any interest in a particular prosecution other than a direct pecuniary interest will not disqualify a grand juror or justify an objection to an indictment in which he participates. *State v. Brewer,* 180 N.C. 716, 104 S.E. 655 (1920); *State v. Pitt, supra;* 38 Am. Jr. 2d *Grand Jury* § 7 (1968). Consequently, the fact that grand juror James Lee Oxendine was the brother of the murder victim and a witness for the prosecution at trial in the case *sub judice* does not compel a finding that the indictment should have been quashed. There is no evidence that the grand jury acted with malice, hatred, or fraud in returning the indictments against defendant. We hold that the trial court acted properly in denying defendant's motions to quash the indictments and for a mistrial.

Defendant received a fair trial free from prejudicial error. The defendant was indeed fortunate to have been the beneficiary of a jury that voted eleven to one to inflict capital punishment.

No error.