STATE OF NORTH CAROLINA v. BOBBY DEAN RINCK AND RONALD DEAN McMURRY

No. 45

(Filed 17 August 1981)

1. **Criminal Law § 92.1— two defendants charged with same crime—consolidation proper**

   The trial court did not err in granting the State's motion to consolidate defendants' cases for trial where each defendant was charged with having committed the same offense at the same time; neither defendant acted at trial in such a way as to incriminate the other and their defenses were not antagonistic; and while the State on occasion presented evidence that was competent against only one ·defendant, the trial court proceeded at those times to instruct the jury that such evidence was competent against only a particular defendant.

2. **Criminal Law § 162.5— witness's testimony—failure to request limiting instructions**

   In a prosecution of defendants for murder committed during the perpetration of a robbery, defendants were not prejudiced by the admission of testimony by a radio dispatcher, since the trial judge instructed the jury that it was not to consider the testimony of the dispatcher against one defendant, and the other defendant made a series of general objections to the dispatcher's testimony but at no time requested a special instruction which would limit the jury's consideration of the evidence.

3. **Arrest and Bail § 3.1; Searches and Seizures § 10— warrantless search and arrest—probable cause**

   There was adequate justification for officers to stop defendants as they walked along the road and to conduct a limited search of defendants, and there was probable cause to arrest defendants where defendants were walking along a road at an unusual hour for persons to be going about their business; the officer who directed defendants to stop knew that a homicide had been committed within a few hundred feet and within little more than the preceding half hour; after defendants were stopped, an officer asked them to identify themselves, and one defendant gave a name different from that which he had given officers only a few minutes earlier; one officer noticed a bulge in the left front pocket of one defendant's pants; the officer also observed defendant placing his hand in the pocket; thinking that the bulge was a weapon, the officer grabbed defendant's hand and pulled it out of the pocket; the officer then reached into the pocket and retrieved a pill bottle which bore decedent's name; officers had observed defendants at decedent's home; defendants were observed going back into the dwelling where the body was subsequently found; and defendants were disheveled and there were stains upon their clothing which appeared to be blood.

### 4. Criminal Law § 99.1— no expression of opinion by judge

The trial judge did not express an opinion as to defendants' guilt by his questions of witnesses, which tended to clarify unclear and confusing testimony, by his comments to counsel, which were straightforward and were not demeaning, insulting or patronizing, or by his arranging of the evidence before the jury in his charge; moreover, the trial court did not express an opinion by spending more time in summarizing the evidence for the State, and the trial court gave equal stress to the contentions of the State and the defendants.

### 5. Homicide § 25.1— felony murder—instructions on burglary proper

The trial court did not err by submitting burglary to the jury as the underlying felony for first degree murder on the theory of felony murder where the evidence tended to show that at 1:16 a.m. a caller purporting to be decedent called the sheriff's department and reported that he had been robbed by Bobby Swink; the dispatcher attempted to call back but the line was constantly busy; investigating officers who discovered decedent's body found one of the telephones in the house off the hook and the other telephone had its cord broken off; defendants were at the scene of the homicide when the first officer arrived at the scene, and they left shortly thereafter; and the State's evidence therefore tended to show that, while the homicide was not committed to overcome resistance or consummate the crime of burglary, it was committed to silence the decedent and thereby prevent him from identifying defendants.

### 6. Homicide § 30— felony murder—failure to instruct on lesser offenses

Where defendants were charged with first degree murder and the evidence tended to show that defendants killed decedent in the perpetration of the underlying felony of burglary, but there was no evidence that decedent was killed other than in the course of the commission of burglary, the trial court was not required to submit lesser included offenses of second degree murder and voluntary manslaughter to the jury.

### 7. Constitutional Law § 30— names of State's witnesses—no pretrial discovery

A defendant in a criminal case is not entitled to a list of the State's witnesses who are to testify against him.

### 8. Homicide § 25— felony murder—lesser offenses of underlying felony—instruction not required

Where defendants were charged with first degree murder under the felony murder doctrine, the underlying felony became part of the first degree murder charge, and further prosecution for the underlying felony was prohibited; therefore, the trial court was not required to instruct the jury as to the lesser included offenses of the underlying felony.

### 9. Criminal Law § 69— telephone conversation—identity of caller—res gestae—business entry

The trial court in a first degree murder case did not err in admitting evidence of a telephone conversation between a sheriff's department dispatcher and a person identifying himself as decedent where the identity of the caller was sufficiently established by the conversation itself and by testimony of decedent's daughter and granddaughter that the voice on the tape of the con-

versation was that of decedent, and though the content of the telephone conversation was hearsay, it was nevertheless admissible as part of the res gestae, and the transcript of the tape recording of the phone call was admissible under the business records exception to the hearsay rule.

**10. Criminal Law § 73.3— statements showing state of mind—admissibility**

The trial court in a first degree murder case did not err in allowing several of the State's witnesses to testify that decedent had often referred to defendant Rinck as "Bobby Swink," since the evidence was offered to show decedent's knowledge of defendant Rinck's identity as one of the persons who had robbed him and to explain why he referred to defendant as "Bobby Swink" during a telephone call which he made to the police department on the day that he was killed.

**11. Constitutional Law § 65—telephone conversation—admissibility—right to confront witnesses not abridged**

In a first degree murder case there was no merit to defendant's contention that admission of a telephone conversation between deceased and a sheriff's department dispatcher violated defendant's right to confront the witnesses against him, since decedent's death rendered him unavailable to testify at defendant's trial; evidence of the phone conversation fell into two well recognized exceptions to the hearsay rule; and the necessity of using the hearsay evidence outweighed the preference for in-court confrontation of the witness.

APPEAL by defendants from judgments of *Grist, J.*, entered at the 25 March 1980 Criminal Session of CATAWBA Superior Court sentencing each defendant to life imprisonment for the crime of first-degree murder.

Upon entry of pleas of not guilty, defendants were tried upon bills of indictment, proper in form, which charged them with the first-degree murder of Donald B. Williamson. At trial, the State presented evidence that tended to show that:

During the evening of 18 August 1979, defendants were in the company of several of their friends, including Cynthia Bass, a witness for the State. Early in the evening of 18 August, Ms. Bass drove defendants from the home of a friend to a tavern on Highway 321 between Newton and Maiden. After a short while, defendants gave Ms. Bass directions and instructed her to drive them to another destination. At approximately one o'clock on the morning of 19 August, Ms. Bass drove her car into the driveway of the home of Donald B. Williamson located near Maiden, North Carolina. The Williamson house was built of cement blocks. Both defendants got out of the car, and Ms. Bass drove away without observing where the men went.

At 1:16 a.m. a dispatcher at the Catawba County Sheriff's Department received a telephone call from a person identifying himself as the decedent, Donald B. Williamson. The caller requested that he be allowed to talk with the Maiden Police Department. Upon inquiry by the dispatcher, the person said he had been robbed of his pocketbook which contained the sum of $35.00. As the caller described the robbery, he identified one of his assailants as being Bobby Swink.[1] Before the conversation ended, the caller gave his name, address and telephone number, as well as a description of his house. After the conversation ended at approximately 1:19 a.m., Deputy Sheriff Gary Sigmon was dispatched to the address.

Deputy Sigmon arrived at the Williamson residence at 1:35 a.m. The officer went to the front door and knocked several times but no one answered. It appeared to the deputy that most of the lights were on in the house. As he stood on the front porch of the house, the officer heard a noise at the rear of the dwelling that sounded like a door closing. As he walked around the left side of the house, he saw a blue automobile parked at the rear of the house. The back door of the house was open.

As Deputy Sigmon approached the vehicle, he saw an individual sitting in the driver's seat whom he subsequently identified as being defendant Rinck. Upon being asked by the officer who had called the sheriff's department, defendant Rinck said "Them in there." Defendant Rinck thereupon got out of the car and walked in front of it. Thereafter, the officer saw another person standing at the threshold of the back door. That individual was wearing faded blue jeans and no shirt, and he had shoulder length brown hair. Officer Sigmon observed both individuals go back into the house. As he stood at the car after the men had gone inside, he saw two rifles, one resting in the rear floorboard, the other lying on the backseat.

The deputy went back to his cruiser and radioed in the license tag number of the automobile parked at the rear of the

---

1. Judy Gail Beal was decedent's daughter and testified for the State. Ms. Beal testified that she and defendant Rinck had dated one another until approximately one week before her father's death. Throughout that time, defendant Rinck had spent much time at decedent's home. According to Ms. Beal, decedent referred to defendant Rinck as "Swink." Decedent's granddaughter, Candy Frye, confirmed the practice.

house. The Communications Center ran a check upon the license number and informed the officer that it was registered in decedent's name. The officer also requested that the dispatcher telephone the residence. After calling the house, the dispatcher told the deputy that the line was busy.

Shortly thereafter, two policemen, Office Tom Hurley and Officer Steve Pruitt, from Maiden arrived. The policemen went to the rear of the house, and Deputy Sigmon covered the front door. Meanwhile, Lieutenant Gene Finger, Shift Commander of the Catawba County Sheriff's Department, arrived at the scene.

Lieutenant Finger and Deputy Sigmon entered the front door to find a telephone cord on the floor and numerous .22 caliber rifle cartridges strewn about the living room. Some of the cartridges had been spent. The men proceeded through the house to the bedroom to find decedent's body lying in the bed. The body bore two bullet wounds about the face.

Upon the arrival of a detective, the lieutenant left the scene to return to the sheriff's office. As he drove along, the officer noticed two individuals walking along the road approximately 200 feet from decedent's residence. The lieutenant turned on his blue light and stopped the men. The individuals were the defendants.

Lieutenant Don Burgess, a detective with the Catawba County Sheriff's Department, observed the blue light from the Williamson house, and Deputy Sigmon, as well as an agent of the State Bureau of Investigation, accompanied the detective to the place where the defendants had been stopped. Lieutenant Burgess observed defendant McMurry placing his hand in a bulging pocket. The detective ordered defendant McMurry to stop and to take his hand out of the pocket. The defendant did as he was told, and Lieutenant Burgess reached into the pocket and retrieved a pill bottle which bore decedent's name. Thereupon, the officers arrested defendants and proceeded to search them. The subsequent search revealed, among other things, a set of keys. The keys were those to the automobile parked at the rear of the Williamson residence which belonged to the decedent. Subsequent investigation identified fingerprints found within the house as being those of the defendants.

Defendant McMurry did not offer any evidence.

Defendant Rinck offered evidence, including his own testimony, that tended to show that he and defendant McMurry had visited the Williamson home during the early morning hours of 19 August for the purpose of visiting decedent's son Jerry Beal, and decedent's daughter, Judy Beal, whom defendant Rinck had dated. They knocked on the front door, but nobody answered. The pair then proceeded to look around the outside premises. Upon the arrival of Deputy Sigmon, the pair left. Defendant Rinck denied that anyone ever called him "Swink."

Other evidence pertinent to our decision will be discussed in the opinion.[2]

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Ralf F. Haskell, for the State.*

*Robert M. Grant, Jr., for defendant Bobby Dean Rinck.*

*Thomas C. Morphis, for defendant Ronald Dean McMurry.*

COPELAND, Justice.

I

While defendants have filed separate briefs before this court, there are several issues that are argued by both of them. Therefore, for the sake of clarity and convenience, those issues which are raised by both defendants will be addressed first.

A

[1]  Defendants argue first that the trial court erred in granting the State's motion to consolidate their cases for trial. The essence of their argument is that by granting the State's motion, the trial court allowed the jury to consider evidence which was competent against only one defendant against both of them. We are compelled to disagree.

Upon the written motion of the prosecutor, charges against two or more defendants may be joined for trial when each of the

---

2. The State proceeded under a theory of felony murder. Upon inquiry by the court, the State conceded that the only aggravating circumstance for which it had evidence was that of the underlying felony of burglary. Thereupon, the court entered judgments sentencing defendants to life imprisonment. *See State v. Cherry,* 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied,* 446 U.S. 941 (1980).

defendants is charged with accountability for each offense. G.S. § 15A-926(b)(2) (1978). Such motions are addressed to the sound discretion of the trial court and are not reviewable on appeal absent a showing of abuse of discretion. *E.g., State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977).

There has been no showing that the trial court abused its discretion. In the case *sub judice*, each defendant was charged with having committed the same offense at the same time; the first-degree murder of Donald B. Williamson on or about the 19th day of August 1979. Neither defendant acted at trial in such a way as to incriminate the other, and their defenses were not antagonistic. While it is the case that, on occasion, the State presented evidence that was competent only against one of the defendants, the trial court proceeded at those times to instruct the jury that such evidence was competent only against a particular defendant. *Compare State v. Clark*, 298 N.C. 529, 259 S.E. 2d 271 (1979).

### B

During its case-in-chief, the State offered the testimony of Mrs. Denise Allen, a dispatcher with the Catawba County Sheriff's Department, concerning a call for assistance which she received at 1:16 a.m. on 19 August 1979. Purporting to be decedent Williamson, the caller said that he had been robbed of his pocketbook which contained thirty-five dollars. Upon inquiry by the dispatcher, the caller identified his assailant as being "Bobby Swink." At the close of the *voir dire* held to determine the competency of Mrs. Allen's testimony concerning the conversation, the trial court ruled that the testimony was admissible as part of the *res gestae* of the crime of robbery but not as part of the *res gestae* of burglary. However, the trial court received the proffered testimony without limiting its consideration by the jury. There was no error.

Initially, we are compelled to observe that defendants are in violation of the Rules of Appellate Procedure. Rule 10(c) provides, in pertinent part, that "[e]ach assignment of error . . . shall be followed by a listing of all the exceptions upon which it is based, identified by their numbers and by the pages of the record on appeal at which they appear." The exceptions to the actual receipt of the evidence in question are not so listed. Therefore, the Rules

of Appellate Procedure mandate that they are deemed abandoned. N.C.R. App. p. 10(c). However, because of the gravity of this crime and the severity of the punishment imposed, we have elected to exercise our discretion and reach the merits of the argument. *See* N.C.R. App. p. 2.

[2] We note initially that even if the trial court had committed error in its handling of this matter, that action could not have prejudiced defendant McMurry because the trial judge instructed the jury that it was not to consider the testimony of the dispatcher against him. The record indicates that, upon giving this instruction, the court asked the jury if the instruction was clear, and that all of the jurors nodded affirmatively. That being the case, defendant McMurry has no basis upon which to argue prejudicial error. *See State v. Clark, supra.*

Similarly, defendant Rinck has no basis upon which to assert error. Defendant Rinck made a series of general objections to the dispatcher's testimony. At no time did he request a special instruction which would limit the jury's consideration of the evidence. Defendant's only motion sought to strike the entire conversation, not an instruction to limit its consideration by the jury. Consequently, the overruling of defendant Rinck's general objection without an appropriate limiting instruction was not error. *State v. Montgomery,* 291 N.C. 91, 229 S.E. 2d 572 (1976).

C

[3] Defendants next contend that the trial court erred in receiving evidence at trial which was obtained as a result of an illegal and unconstitutional arrest. An individual is arrested when law enforcement officers interrupt his activities and significantly restrict his freedom of action. *State v. Morgan,* 299 N.C. 191, 261 S.E. 2d 827, *cert. denied,* 446 U.S. 986 (1980). No one disputes that defendants were placed under arrest within a matter of minutes after being stopped as they walked along the road near decedent's house. However, defendants argue that there was no basis upon which law enforcement officers could legally detain or search them. If defendants are correct in their position, it follows necessarily that the subsequent arrests were invalid and cannot justify a search of their persons. After careful deliberation, we conclude that this assignment is without merit.

---

---

If from the totality of circumstances, a law enforcement officer has reasonable grounds to believe that criminal activity may be afoot, he may temporarily detain an individual. *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968); *State v. Buie,* 297 N.C. 159, 254 S.E. 2d 26, *cert. denied,* 444 U.S. 971 (1979); *State v. Thompson,* 296 N.C. 703, 252 S.E. 2d 776, *cert. denied,* 444 U.S. 907 (1979); *State v. Streeter,* 283 N.C. 203, 195 S.E. 2d 502 (1973). If upon detaining the individual, the officer's personal observations confirm that criminal activity may be afoot and suggest that the person detained may be armed, the officer may frisk him as a matter of self-protection. *Terry v. Ohio, supra; State v. Buie, supra; State v. Streeter, supra.*

In *State v. Streeter, supra,* the State's evidence tended to show that while they were on routine patrol at approximately 2:45 a.m., two police officers in Greenville, North Carolina observed the defendant walking along a highway roughly four hundred feet from a doctor's office. Because of the time and his proximity to the nearby business offices, defendant was approached by the officers and directed to stop. One of the officers testified that they had stopped the defendant to learn his identity and the reason he was in the area at that hour of the morning. As he talked with the defendant, one of the officers observed a bulge under the defendant's shirt, and he ordered defendant not to move. Thinking that the bulging object was a weapon, the officer touched it and thought the object was made of metal. The policeman thereupon reached under the defendant's shirt and found one pair of gloves, one screwdriver, one hammer, one prybar, a flashlight, and a bank bag. Thereupon, the officers seized the items and arrested defendant for the possession of burglary tools. Over the objection of defendant, the trial court received the testimony of one of the officers concerning the encounter, as well as the items that had been seized.

On appeal, this court affirmed the judgment of the Court of Appeals finding no error in the defendant's trial. Writing for the majority, Justice Huskins drew upon the rule and rationale enunciated in *Terry v. Ohio, supra,* to uphold the officer's conduct in stopping the defendant and subsequently frisking him for weapons. The opinion notes that:

> "Crimes of violence are on the increase, and officers are becoming the victims of such crimes in increasing numbers.

As a result the necessity for officers to protect themselves and others in situations where probable cause for an arrest may be lacking is now recognized and permitted. Of course, North Carolina has no 'stop and frisk' statute although many states do. (Citation omitted.) The lack of such a statute, however, is not fatal to the authority of law enforcement officers in North Carolina to stop suspicious persons for questioning (field interrogation) and to search those persons for dangerous weapons (frisking). These practices have been a time-honored police procedure and have been recognized as valid at common law 'as a reasonable and necessary police authority for the prevention of crime and the preservation of public order.' " (Citations omitted.) 283 N.C. at 209, 195 S.E. 2d at 506.

It is our conclusion that *Streeter* controls the  case *sub judice*, and, therefore, we hold that on the facts of this particular case there was nothing illegal about defendants being stopped or searched. It must be remembered that defendants were walking along the road at an unusual hour for persons to be going about their business. In this regard, the present case approximates the situation dealt with in *Streeter*. However, in one critical respect, there was a more compelling reason for stopping defendants as they walked along the road. The officer who directed them to stop knew that a homicide had been committed within a few hundred feet and within little more than the preceding half hour. While these circumstances do not constitute probable cause for an arrest, they do amount to a reasonable basis for directing defendants to stop and identify themselves.

However, to say that it was lawful to stop defendants as they walked along the road does not end the matter. It must be determined whether it was permissible for the officers to search defendants. Upon seeing them as they walked along the road near decedent's house, Lieutenant Finger turned on his blue light and directed defendants to stop. As we noted above, the officer was acting lawfully in directing the men to stop. Meanwhile, Deputy Sigmon and Lieutenant Burgess arrived at the scene. Both men had been at the Williamson house investigating the homicide, and they had seen the flashing blue light nearby. Lieutenant Burgess thereupon asked defendants to identify themselves. Defendant McMurry identified himself by his given name. However, defend-

ant Rinck said that his name was "Shuford." Deputy Sigmon, who recognized defendants from his earlier encounter, told his fellow officers that defendant Rinck had identified himself earlier as "Swink."

At the same time, Lieutenant Burgess noticed a bulge in the left front pocket of defendant McMurry's pants. The officer also observed defendant McMurry placing his hand in the pocket. Thinking that the bulge was a weapon, Lieutenant Burgess grabbed defendant McMurry's hand and pulled it out of the pocket. The officer then reached in the pocket and retrieved a pill bottle which bore decedent's name. Thereupon, the officers placed both defendants under arrest and searched them.

Again, we perceive nothing unlawful. As we noted earlier, if an officer who has detained an individual has reason to believe that criminal activity may be afoot and that the individual may be armed, the officer may frisk him as a matter of self-protection. *Terry v. Ohio, supra; State v. Buie, supra; State v. Streeter, supra.* Such was the case here. Defendants had been lawfully stopped in close proximity to the scene of a recent homicide. Nothing else appearing, there were no grounds upon which a search could be justified. However, Officer Burgess observed a bulge in defendant McMurry's pocket. He also saw defendant McMurry put his hand in the pocket. A reasonable man facing the same set of circumstances would have reacted as did Lieutenant Burgess. That the search did not reveal a weapon is irrelevant. Evidence of a crime which is necessarily exposed by a limited weapons search is evidence which is lawfully obtained. *State v. Streeter, supra.*

Having established that there was adequate justification for stopping defendants as well as searching them, we now turn our attention to the question of whether there was probable cause to arrest defendants. Unless probable cause existed at the time of their seizure, defendant's arrest was constitutionally invalid, *State v. Streeter, supra,* as well as statutorily prohibited. *See* G.S. § 15A-401 (Cum. Supp. 1979). The existence of probable cause depends upon whether at the time of the arrest there were facts and circumstances within the knowledge of the arresting officer which would justify a prudent man's belief that a suspect had committed an offense. *Beck v. Ohio,* 379 U.S. 89, 13 L.Ed. 2d 142,

85· S.Ct. 223 (1964); *State v. Joyner*, 301 N.C. 18, 269 S.E. 2d 125 (1980); *State v. Streeter, supra; see generally* J. Cook, Constitutional Rights of the Accused; Pretrial Rights § 17 (1972). The existence of probable cause to arrest an individual is a pragmatic question to be determined in each case in light of the particular circumstances and the particular offense involved. *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971).

We conclude from all the facts and circumstances in the case *sub judice* that there was probable cause to arrest defendants. Deputy Sigmon recognized defendants from his earlier encounter with them at decedent's house. That fact alone does not establish probable cause for an arrest. It is but one fact among several that must be considered. Not only had defendants been seen at decedent's home, they were observed going back into a dwelling where a body was subsequently found. Also, Deputy Sigmon recognized that defendant Rinck gave a different last name in identifying himself to Lieutenant Finger than he had at the house. Defendants' appearance were disheveled and there were stains upon clothing that appeared to be blood. All of these considerations, coupled with the medicine bottle bearing decedent's name found in defendant McMurry's pocket, would be sufficient to justify a prudent man's belief that defendants had been involved in decedent's death. It, therefore, follows that the arresting officers were acting lawfully by thoroughly searching the person of each defendant and that the items so seized were not subject to being suppressed. *Chimel v. California*, 395 U.S. 752, 23 L.Ed. 2d 685, 89 S.Ct. 2034 (1969).

### D

[4] Similarly, we find no merit in defendants' contentions that by his questions of witnesses, his comments to counsel, and in his arranging of the evidence before the jury in his charge, the trial judge expressed an opinion as to their guilt in violation of G.S. § 15A-1222 (1978).

A trial judge may properly question· witnesses in order to clarify and to promote a proper understanding of the testimony. *E.g., State v. Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976). However, such questions constitute prejudicial error if by their tenor, frequency, or persistence, the trial judge expresses an opinion. *E.g., State v. Lea*, 259 N.C. 398, 130 S.E. 2d 688 (1963). In

the case *sub judice,* we find nothing objectionable about the judge's questions. Since they were asked in a detached and neutral fashion, they tended to clarify unclear and confusing testimony.

Nor do we find anything objectionable in the judge's comments to defense counsel during the cross-examination of Deputy Sigmon. They were directed at the form of the questions employed, as well as the proper scope of cross-examination. The comments are straightforward, and they are not demeaning, insulting, or patronizing. *See State v. Berry,* 295 N.C. 534, 246 S.E. 2d 758 (1978).

Defendants' objections to the judge's array of the evidence before the jury are also without merit. It is clear that while the judge spent more time summarizing the evidence for the State than he did the evidence for defendant Rinck,[3] the mere fact that a judge spends more time summarizing the evidence for the State does not amount to an expression of opinion. *E.g., State v. Sanders,* 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied,* 423 U.S. 1091 (1976). While evidence which is brought out on cross-examination is evidence for a defendant, *State v. Sanders,* 298 N.C. 512, 259 S.E. 2d 258 (1979), it is not error for a court to fail to summarize such evidence if it is not of an exculpatory nature which goes to the establishment of a defense. *State v. Moore,* 301 N.C. 262, 271 S.E. 2d 242 (1980). The cross-examination of the State's witnesses elicited no such evidence. Lastly, defendants argue that the trial court erred in failing to state their contentions sufficiently. A trial court is not required to state the contentions of the parties. *E.g., State v. Dietz,* 289 N.C. 488, 223 S.E. 2d 357 (1976). In the present case, the court merely stated that it was the contention of the State that the jury ought to be satisfied of defendant's guilt beyond a reasonable doubt from all of the evidence; and that it was the contention of defendants that the State's evidence ought not to be believed, and that, at the very least, the jury ought to have a reasonable doubt as to their guilt. Nothing more is required, and it is clear from the record that the court gave equal stress to the contentions of the State as well as to those of defendants.

---

3. Defendant McMurry did not offer any evidence. The court instructed the jury that they were not to use defendant McMurry's silence against him in any way.

E

[5]  Defendants next contend that the trial court erred by submitting burglary to the jury as the underlying felony for first-degree murder on the theory of felony murder. There was no error.

A killing is committed in the perpetration or attempted perpetration of a felony when there is no break in the chain of events leading from the initial felony to the act causing death. *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1972). The underlying felony is not deemed terminated prior to the killing merely because the participants have proceeded far enough to be convicted of the underlying felony. *State v. Squire,* 292 N.C. 494, 234 S.E. 2d 563, *cert. denied,* 434 U.S. 998 (1977).

It is our conclusion that *State v. Thompson, supra,* controls the present case. In *Thompson,* the defendant broke and entered an apartment and took various articles of property. An accomplice asked the defendant if he had gotten everything he wanted. The defendant replied affirmatively, but he went on to say that he had something "to take care of." Upon further questioning by the accomplice, the defendant said that it was "somebody upstairs." The defendant then went upstairs to the apartment and killed a youth who lived there. On appeal, this Court held that it was not error to have charged the jury on felony murder with felonious breaking and entering and felonious larceny being the underlying felonies.

In the present case, the evidence tends to show a similar factual pattern to that of *Thompson.* At 1:16 a.m. a caller purporting to be decedent called the Catawba County Sheriff's Department and reported that he had been robbed by Bobby Swink. The dispatcher attempted to call back but the line was constantly busy. Investigating officers who discovered decedent's body found one of the telephones in the house off the hook, and the other telephone had its cord broken off. Defendants were at the scene of the homicide when the first officer arrived at the scene, and they left shortly thereafter. The State's evidence therefore tends to show that while the homicide was not committed to overcome resistance or consummate the crime of burglary, it was committed to silence the decedent and thereby prevent him from identi-

fying defendants. In this respect, the present case is identical to *State v. Thompson, supra.*

There was no error.

## F

**[6]** Defendants were charged with the crime of first-degree murder. The State proceeded under a felony murder theory, and the trial judge so instructed the jury. Defendants now assert that the trial court erred in failing to charge the jury on the lesser included offenses of second-degree murder and voluntary manslaughter. There was no error.

It is well-established in North Carolina that the trial court is under a duty to instruct the jury upon, and to submit for its consideration, a lesser included offense only when there is evidence tending to show the commission of such lesser included offense. *State v. Squire, supra.* In particular, where the law and the evidence justify the use of the felony murder rule, the State is not required to prove premeditation and deliberation, and neither is the court required to submit the offenses of second-degree murder or manslaughter unless there is evidence to support it. *State v. Warren,* 292 N.C. 235, 232 S.E. 2d 419 (1977); *State v. Swift,* 290 N.C. 383, 226 S.E. 2d 652 (1976).

Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *E.g., State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971). Voluntary manslaughter is the unlawful killing of a human being without malice, express or implied, and without premeditation and deliberation. *E.g., State v. Fleming,* 296 N.C. 559, 251 S.E. 2d 430 (1979).

The State submits, and we agree, that the evidence tends to show that defendants killed decedent in the perpetration of the underlying felony of burglary. *Compare State v. Thompson, supra.* There is no evidence that decedent was killed other than in the course of the commission of the felony of burglary. There is no evidence in the record which would justify submitting any lesser included offenses. The record establishes that defendants were guilty of first-degree murder or not guilty of any crime. The State has established a *prima facie* case as to first-degree murder under the felony murder rule. No other crime was made out by the evidence.

There was no error.

## II

We next address those assignments of error raised by defendant McMurry.

## A

[7] Defendant McMurry first contends that the trial court erred in denying his motion for pretrial discovery of the names of the State's witnesses.

It is well settled that a defendant in a criminal case is not entitled to a list of the State's witnesses who are to testify against him. G.S. 15A-903, which lists the information the State must disclose upon defendant's proper discovery motion, does not alter this rule. *State v. Moore*, 301 N.C. 262, 271 S.E. 2d 242 (1980); *State v. Sledge*, 297 N.C. 227, 254 S.E. 2d 579 (1979); *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977). There was no error.

## B

[8] By his next assignment, McMurry argues that the trial court erred in failing to more fully set forth the elements of robbery in his charge to the jury. The trial judge defined robbery as follows:

"Robbery is the forcible taking and carrying away personal property of another from his person or in his presence without his consent with the intent to deprive him of its use permanently, the taker knowing that he is not entitled to take it."

This instruction was in compliance with the definitions of common law robbery previously outlined by this Court. *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980); *State v. Moore*, 279 N.C. 455, 183 S.E. 2d 546 (1971).

Defendant alleges that the trial judge should have also submitted an instruction to the jury on the lesser included offenses of non-felonious larceny and non-felonious breaking and entering. We disagree. McMurry was charged in an indictment with first-degree murder under the felony-murder doctrine. The State sought to prove that the murder occurred during the perpetration of the felony of burglary in the first-degree. First-degree burglary is defined as the breaking and entering in the nighttime of an oc-

cupied dwelling or sleeping apartment with the intent to commit a felony therein. *State v. Simpson,* 299 N.C. 377, 261 S.E. 2d 661 (1980); *State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974). The State's evidence tended to show that robbery was the felony that defendants intended to commit at the time of the breaking and entering into the home of Donald Williamson. Thus, the instructions on both burglary and armed robbery were submitted to the jury as part of the murder charge. Under such circumstances, the underlying felonies become part of the first-degree murder charge, prohibiting a further prosecution of the defendant for the underlying felonies. *State v. Thompson, supra.* Defendant McMurry could not have been lawfully convicted of robbery upon his indictment for first-degree murder. The court was therefore not required to instruct the jury as to the lesser included offenses of robbery. *State v. Squire, supra.* Defendant's assignment of error is without merit and overruled.

### III

We finally address those issues argued solely by defendant Rinck.

### A

[9] Rinck submits that the trial court erred in admitting evidence of the telephone conversation between Deputy Denise Allen and a person identifying himself as the decedent, Donald B. Williamson.

Deputy Allen, a dispatcher for the Catawba County Sheriff's Department, testified for the State that she received a telephone call on one of the emergency lines at the Catawba County Communications Center at 1:16 a.m. on 19 August 1979. The caller identified himself as Donald Williamson and stated that he had just been robbed of his pocketbook containing about $35.00. He identified one of his assailants as "Bobby Swink." Upon Deputy Allen's request, the caller gave his address, telephone number, and a description of his house. The entire conversation was tape recorded and retained as part of the records of the Catawba County Sheriff's Department, as are all calls made on the Communications Center's emergency lines. A transcript of the recorded conversation was received into evidence.

Defendant maintains that the evidence of the telephone call was improperly admitted on two grounds; first, because the State

was unable to sufficiently identify the caller as Donald Williamson and second, because the statements made in the telephone conversation were hearsay and not admissible under any of the recognized exceptions to the hearsay rule.

Justice Exum, speaking for the Court in *State v. Richards*, 294 N.C. 474, 480, 242 S.E. 2d 844, 849 (1978), summarized the principles of law relevant to establishing the identity of a telephone caller as follows:

> "Before a witness may relate what he heard during a telephone conversation with another person, the identity of the person with whom the witness was speaking must be established. *State v. Williams*, 288 N.C. 680, 698, 220 S.E. 2d 558, 571 (1975). If the call was from the person whose identity is in question, the mere fact that he represented himself to be a certain person is not enough to identify him as that person, 1 Stansbury's N.C. Evidence § 96, p. 310 (Brandis Rev. 1973) *accord, State v. Williams, supra.* Identity of the caller may be established by testimony that the witness recognized the caller's voice, or by circumstantial evidence. *State v. Williams, supra,* 288 N.C. at 698, 220 S.E. 2d at 571. It is not always necessary to prove the identification before introducing evidence of the conversation, particularly in criminal prosecutions where secrecy, anonymity and concealed identity are generally resorted to. In such cases it is only necessary that identity of the person be shown directly or by circumstances somewhere in the development of the case. . . . *State v. Strickland,* 229 N.C. 201, 208, 49 S.E. 2d 469, 474 (1948)."

Applying these principles to the facts of the case *sub judice,* we find that there was sufficient evidence presented to identify the caller as Donald Williamson. During the conversation, the caller clearly stated his name, address, and telephone number and gave an accurate description of his house, all of which information was verified by law enforcement officers. Further, although Deputy Allen was not personally familiar with Mr. Williamson's voice so as to recognize it at the time of the conversation, both decedent's daughter, Zonnie Reinhardt, and his granddaughter, Candy Frye, listened to the tape recording of the call at *voir dire* and were able to immediately and without hesitation identify the male voice on the tape as that of decedent.

We are likewise unpersuaded by defendant Rinck's contention that, assuming the identity of the caller was sufficiently established, Deputy Allen's testimony regarding the substance of that conversation and the transcript of the tape recording of the call were still inadmissible as hearsay not falling within any of the recognized exceptions to the hearsay rule. Whenever a statement of any person other than the witness himself in his present testimony is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. *State v. Tilley,* 292 N.C. 132, 232 S.E. 2d 433 (1977). Stated differently, evidence, whether oral or written, is hearsay "when its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness by whom it is sought to produce it." *State v. Deck,* 285 N.C. 209, 213, 203 S.E. 2d 830, 833 (1974). Unless it falls within one of the recognized exceptions to the hearsay rule, hearsay evidence is inadmissible. *State v. Connley,* 295 N.C. 327, 245 S.E. 2d 663 (1978), *death sentenced vacated,* 441 U.S. 929 (1979). Indisputably, the content of the telephone conversation between Deputy Allen and the decedent was hearsay, as the evidence was offered to prove the truth of the matters discussed during the call and its probative force depended upon the credibility of the decedent. We hold, however, that this evidence falls within two well-established exceptions to the hearsay rule and was therefore properly admitted.

First, Deputy Allen's testimony regarding the entire conversation was admissible under the *res gestae* exception. Under that exception, statements made by an individual immediately prior to or during the course of a continuing criminal transaction are admissible despite their hearsay nature. The *res gestae* doctrine was described in *State v. Connley, supra,* as follows:

"The rule of res gestae, under which it is said that all facts which are a part of the res gestae are admissible, is a rule determining the relevancy and not the character or probative force of the evidence. If the court determines that the fact offered is a part of the the res gestae, it will be accepted, because, as it is said, that fact is then relevant. . . . Circumstances constituting a criminal transaction which is being investigated by the jury, and which are so interwoven with other circumstances and with the principal facts which are at issue that they cannot be very well separated from the

principal facts without depriving the jury of proof which is necessary for it to have in order to reach a direct conclusion on the evidence, may be regarded as res gestae.

These facts include declarations which grow out of the main fact, shed light upon it, and which are unpremeditated, spontaneous, and made at a time so near, either prior or subsequent to the main act, as to exclude the idea of deliberation or fabrication. A statement made as part of res gestae does not narrate a past event, but it is the event speaking through the person and therefore is not excluded as hearsay, and precludes the idea of design." 295 N.C. at 341-2, 245 S.E. 2d at 672, *quoting from* 1 Underhill's Criminal Evidence § 266 (5th Ed. 1956).

For a declaration to be competent as part of the *res gestae*, the State must show: (a) that the declaration was of such a spontaneous character that it is unlikely that the declarant had the opportunity to reflect and fabricate; (b) that it was spoken contemporaneously with the transaction or so close in time to the transaction as to be practically inseparable therefrom; and (c) it must be relevant to the facts sought to be proved. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755, *cert. denied,* 414 U.S. 874 (1971); *Coley v. Phillips,* 224 N.C. 618, 31 S.E. 2d 757 (1944).

Both Deputy Allen's testimony and the transcript of the tape clearly show that when the decedent called the dispatcher, he immediately stated that he had "just" been robbed. In addition, although the decedent was alive during the phone conversation, the State's evidence indicates that he was killed no more than seventeen minutes after the call, at which time law enforcement officers arrived at his home and found his body. Deputy Allen testified that she called decedent's home immediately after their conversation to verify the call, but was unable to get anything other than a busy signal. The officers who investigated the incident found that decedent's phone had been taken off the hook. This evidence is sufficient to show the spontaneous character of the phone conversation and the fact that it was made contemporaneously with the continuing criminal transaction of the robbery and the homicide. Under these facts, we hold that Deputy Allen's testimony concerning the phone conversation was properly admitted as part of the *res gestae. See also State v. Cawthorne,* 290 N.C. 639, 227 S.E. 2d 528 (1976).

The transcript of the tape recording of the phone call was likewise admissible under the business records exception to the hearsay rule. Business entries made in the regular course of business, at or near the time of the transaction, and which are authenticated by a witness who is familiar with the system under which they are made, are admissible despite their hearsay nature. *State v. Connley, supra;* 1 Stansbury's N.C. Evidence § 155 (Brandis Rev. 1973). Several witnesses employed by the Catawba County Sheriff's Department testified at *voir dire* that all calls made on the emergency lines of the Catawba County Communications Center were regularly recorded and stored, and that the call at issue in this case was recorded and stored in the normal manner. The transcript of this conversation was thus admissible as a business entry.

### B

[10]  Defendant Rinck next argues that the trial court erred in allowing several of the State's witnesses to testify that the decedent, Donald Williamson had often referred to defendant Rinck by the name "Bobby Swink." Defendant complains that such testimony was inadmissible hearsay evidence not falling within any recognized exception to the hearsay rule.

It is well settled that an individual's statements concerning his own state of mind are admissible to prove his state of mind, knowledge and intention, despite the hearsay nature of the statements. 1 Stansbury's North Carolina Evidence § 161 (Brandis Rev. 1973). In the case before us, several witnesses testified that the decedent had referred to defendant as "Bobby Swink" on several occasions prior to his death. This evidence was offered to show the decedent's knowledge of defendant Rinck's identity and to explain why he referred to him as "Bobby Swink" during the telephone call to the Catawba County Police Department at 1:16 a.m. on 19 August 1979. Consequently, the testimony was properly admitted and defendant's allegations to the contrary are without merit.

### C

[11]  Defendant Rinck further argues that even if the hearsay evidence of the phone call between the deceased and Deputy Allen on 19 August 1979 is admissible under an exception to the hearsay rule, the admission of this evidence is nevertheless a violation of defendant's right under the Sixth Amendment to the

United States Constitution to confront the witness presented against him.

In support of his argument, defendant chiefly relies on the recent case of *Ohio v. Roberts,* --- U.S. --- , 100 S.Ct. 2531, 65 L.Ed. 2d 597 (1980). The Court in *Roberts,* however did not prohibit the use of hearsay testimony, but merely expressed a strong preference for face-to-face confrontation and suggested a weighing of this preference against considerations of public policy and the necessities of the case. *See also Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed. 2d 213 (1970). The court held that hearsay evidence may be used without violating an accused's sixth amendment right of confrontation where: (a) the declarant is unavailable to testify at defendant's trial and (b) where the testimony bears adequate indicia of reliability, which reliability can be inferred where the evidence falls within a firmly established hearsay exception.

In the case *sub judice,* decedent's death rendered him unavailable to testify at defendant's trial. Furthermore, we held that evidence of the phone conversation between Donald Williamson and Deputy Allen fell into two well recognized exceptions to the rule which renders hearsay evidence generally inadmissible. The fact that the conversation was part of the *res gestae* of the robbery and homicide offenses indicates its reliability, in that the decedent had not had the opportunity to fabricate his statements. Under these circumstances we find that the necessity of using the hearsay evidence outweighs the preference for in-court confrontation of the witness, and defendant Rinck's assignment of error is without merit.

D

Defendant Rinck finally contends that the trial court erred in sustaining the State's objections to several of his attempts to explain his answers, thereby violating his right to testify in his own behalf pursuant to G.S. 8-54. We disagree.

We find that any error by the trial court in sustaining the State's objections was cured when the evidence sought to be admitted was subsequently admitted without objection. *State v. Colvin,* 297 N.C. 691, 256 S.E. 2d 689 (1979); *State v. Milano,* 297 N.C. 485, 256 S.E. 2d 154 (1979); *State v. Holmes,* 296 N.C. 47, 249 S.E.

2d 380 (1978). Consequently, defendant's assignment of error is overruled.

Defendants received a fair trial free from prejudicial error and we find

No error.